J-S03042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MERRICK STEVEN KIRT DOUGLAS | |
| Appellant | No. 2131 EDA 2014 |

Appeal from the PCRA Order June 13, 2014
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0000289-2008

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 08, 2015**

Merrick Steven Kirt Douglas[1] appeals the order entered June 13, 2014, in the Court of Common Pleas of Carbon County, denying him relief on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  In this timely, first, PCRA[2] petition and appeal, Douglas claims the PCRA court erred in determining (1) trial counsel was ineffective for

_____

[1] Douglas's name appears throughout the certified record with and without a slash between Steven and Kirt.  His name also appears as "Kirk" rather than "Kirt".  When Douglas testified at a hearing on November 18, 2011, his name was transcribed as "Merrick Steven Kirt Douglas", one complete name rather than as two names, as suggested by the use of a slash.  We will refer to him as Douglas.

[2] In a prior PCRA petition, Douglas was granted *nunc pro tunc* relief to file a petition for allowance of appeal to the Pennsylvania Supreme Court. Accordingly, this petition is considered his first PCRA petition.

failing to file the requisite notice of intent to present an alibi defense, and (2) appellate counsel was ineffective for failing to file an adequate Pa.R.A.P. 1925(b) statement in his direct appeal. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm on the basis of the sound reasoning of the PCRA court's June 13, 2014, memorandum opinion denying Douglas relief on his PCRA petition, and its August 4, 2014, Pa.R.A.P. 1925(a) memorandum opinion that incorporates the June 13, 2014 decision, *in toto*.

Briefly, the charges against Douglas arose from an incident that took place on July 10, 2007. After Douglas clocked out of work, he stopped to talk to the owner's 17-year-old daughter.[3] Douglas's time card showed he clocked out at 3:37 p.m. After a co-worker left, Douglas picked the daughter up, carried her downstairs, molested her and attempted to rape her. She escaped when the family dog started barking, leading Douglas to believe the victim's mother had returned home. From work, he went to his mother's place of employment, which was approximately 25 miles, or a 30 to 40 minute drive, away.

At trial, Douglas's mother testified he arrived at her work sometime between 4:00 and 4:15 p.m. This testimony effectively supplied an alibi for Douglas, given the time he clocked out of work and the uncontradicted time

---

[3] The electrical contracting business Douglas worked for was located in the owner's home. To use the time clock, Douglas had to go inside the home.

it took to drive from his work to his mother's workplace. However, Douglas did not file a notice of alibi defense prior to trial. Accordingly, the mother's testimony regarding what time Douglas arrived was stricken. A jury then acquitted Douglas of rape, but convicted him on a variety of other offenses including attempted rape, indecent assault by forcible compulsion, and unlawful contact with a minor. Douglas received an aggregate sentence of six to twelve years' incarceration.

Douglas raised six issues in his direct appeal. These issues were: (1) trial court erred in failing to grant a mistrial after a witness referred to Douglas's offer to take a polygraph test, (2) the Commonwealth violated mandatory discovery rules by failing to turn over the initial police report, (3) the trial court erred in allowing the Commonwealth to ask leading questions, (4) the evidence was insufficient to support the verdict, (5) the verdict was against the weight of the evidence, and (6) trial counsel was ineffective. The Superior Court addressed the first issue, found issues 2-5 waived, and determined issue 6 was premature. *See Commonwealth v. Douglas*, 30 A.3d 525 (Pa. Super 2011) (unpublished memorandum).[4] Issues 2 and 3 were waived for failure to include the issues in the Pa.R.A.P. 1925(b) statement, issue 4 was waived for failure to develop the argument, and issue 5 was waived for failure to preserve the claim in a post-trial motion.

---

[4] Our Supreme Court denied Douglas's petition for allowance of appeal. *Commonwealth v. Douglas*, 67 A.3d 793 (Pa. 2013)

- 3 -

As noted above, in this PCRA petition, Douglas claims his trial counsel was ineffective for failing to preserve the possibility of an alibi defense, and direct appeal counsel was ineffective for filing a legally insufficient Pa.R.A.P. 1925(a) statement.[5]

> Our standard of review of a trial court order granting or denying relief under the PCRA requires us to determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error. "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."

***Commonwealth v. Perez***, 103 A.3d 344, 347 (Pa. Super. 2014) (citation omitted).

The Honorable Roger N. Nanovic, President Judge, has authored a well-reasoned and comprehensive decision addressing Douglas's claims. In supplement of that decision, we write briefly to provide a succinct timeline regarding the alibi defense.

Our review of the record demonstrates that prior to trial, trial counsel had no reasonable belief in the existence of an alibi defense. In his statement to the police, Douglas claimed he left the scene of the crime at approximately 4:00 p.m. N.T. Trial, 12/8/2009, at 183. Trial counsel testified at the PCRA hearing that Douglas also told him he left at

---

[5] Although only two issues were found waived pursuant to Rule 1925(b), Douglas has included all waived issues under that argument. The PCRA court has addressed all aspects of the claims in its comprehensive memorandum opinion.

approximately 4:00 p.m. N.T. PCRA Hearing, 8/13/2013, at 12. The victim testified at trial that the incident was over and Douglas left the house at approximately 4:00 p.m. N.T. Trial, 12/8/2009, at 103. Trial counsel testified at the PCRA hearing that Douglas's mother told his private investigator that Douglas arrived at her workplace between 4:30 and 4:40 p.m. not between 4:00 and 4:15 p.m. as she testified at trial.[6] N.T. PCRA Hearing, 8/13/2013, at 21. The 4:30 to 4:40 p.m. arrival time comports with Douglas leaving the crime scene at approximately 4:00 p.m. with a 40-minute drive time.[7] N.T. PCRA Hearing, 8/13/2013, at 12-13. Accordingly, trial counsel had no reason to file a notice of alibi.

In all other aspects, we rely upon the sound reasoning of the PCRA court's memorandum decision of June 13, 2014, as incorporated by the PCRA court's August 4, 2014, memorandum.

Because the PCRA court's order denying Douglas relief is supported by the record and is free of legal error, we affirm the order.

---

[6] The intent of calling Douglas's mother to testify on his behalf was for her to relate that when Douglas arrived he did not appear disheveled or bruised and that he did not act in any way to indicate that anything extraordinary had just occurred. After her testimony regarding Douglas's time of arrival was stricken, she provided the intended testimony.

[7] Douglas's mother testified it was a good "40 minute drive" between locations. N.T. Trial, 12/8/2009, at 241. At the PCRA hearing, trial counsel testified he determined through Google that it should take between 25-35 minutes to drive the distance. N.T. PCRA Hearing, 8/13/2013, at 21-22.

Order affirmed. Parties are directed to attach a copy of the June 13, 2014, and August 4, 2014, decisions in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2015

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,   :
                                   :
          v.                    :     No. 289-CR-2008
                                   :
MERRICK STEVEN KIRK DOUGLAS,   :
         Defendant      :

Jean Engler, Esquire           Counsel for Commonwealth
Assistant District Attorney

Michael P. Gough, Esquire      Counsel for Defendant

MEMORANDUM OPINION

Nanovic, P.J. - June 13, 2014

Before the court is Defendant's Post-Conviction Relief Act (PCRA)[1] petition wherein the primary issue raised is whether trial counsel was ineffective for not having discovered or presented at trial an alibi defense. For the reasons which follow, we hold that where counsel did not learn of facts supporting a possible alibi defense until the witness testified at trial, at variance with earlier statements made by the witness and inconsistent with information previously provided by the Defendant to both police and defense counsel, counsel will have rendered effective assistance.

PROCEDURAL AND FACTUAL BACKGROUND

The instant PCRA Petition filed by the Defendant, Merrick Douglas, on May 31, 2013, collaterally attacks his convictions for

---

[1] 42 Pa.C.S.A. §§ 9541-46.

sexually assaulting his boss's seventeen-year-old daughter. The facts of this case occurred in 2007 when Defendant worked for an electrical contracting business that the owner operated out of his home in Albrightsville, Carbon County, Pennsylvania. On July 10, 2007, at the end of his shift, Defendant went to the owner's home to punch a time clock. Defendant was accompanied by a co-worker, Nelson Soto, who was likewise finishing work for the day and intending to punch out. Upon entering the home, both Defendant and Soto went upstairs and punched out. (N.T. 12/8/2009, pp. 68-69; 230-31). Defendant's time card documented the time as 3:37 P.M. (N.T. 12/8/2009, p. 54; N.T. 11/18/2011, p. 41; N.T. 8/13/2013, p. 25).

While Soto left the home immediately after punching out, Defendant remained, talking to A.D., the owner's seventeen-year-old daughter, who was by herself in the home. Soto returned to the home approximately five minutes later to return keys to the work van which he had inadvertently taken with him.[2] On his return, Soto observed the Defendant and A.D. for only a brief time – they were talking with one another – and then left. When Soto left the home the second time he was alone and sure Defendant was still in the home. (N.T. 12/8/2009, pp. 231-32). When asked, Soto did not know when Defendant exited the home. (N.T. 12/8/2009, p. 234).

---

[2] At trial Soto testified he returned within a minute or so to return the keys. (N.T. 12/8/2009, p. 232). A.D. recalled the time lapse before Soto's return to be approximately five to ten minutes. (N.T. 12/8/2009, pp. 69, 129).

[FN-3-14]

2

5/

According to A.D., when Soto left the second time, she and Defendant were sitting on a living room couch engaged in small talk. Shortly after this time, A.D. went into the kitchen to get a glass of water. Defendant followed, complimented her on her appearance, and started to lift up the bottom of her dress. A.D. testified she pushed Defendant's hand away and asked him to leave. Defendant commented that they were alone in the home and should go down to the basement; he then placed one arm around her upper body, picked her legs up with the other, and physically carried her downstairs against her will.

Once in the basement, Defendant pinned A.D. against a pool table with his body, lifted up her dress, pulled down her underwear, penetrated her vagina with his fingers, and attempted to penetrate her vagina with his penis. During this entire time, A.D. testified she was screaming for him to stop. The assault ended when A.D.'s dog barked, alerting Defendant to the possibility that A.D.'s parents were home, at which time A.D. escaped from Defendant's grasp. At this point, A.D. ran upstairs to her bedroom and locked the door behind her. Defendant followed. When he was unable to open the door, he left.

A.D. told her parents about the assault the next day, whereupon they immediately contacted the Pennsylvania State Police. Although the State Police came to A.D.'s home that evening, and questioned what had happened, for reasons which are

inexplicable, it appears that no written record of this meeting on July 11, 2007, was made and/or retained by the police.

During further investigation by the police on July 13, 2007, Defendant gave a written statement wherein he admitted that he was at the home and spoke with A.D., but denied that he sexually assaulted her. In this statement, Defendant also told the police that he left the victim's home at approximately 4:00 P.M., "right behind Soto." (N.T. 11/8/2009, pp. 182-83). After the police completed their investigation, Defendant was charged with rape by forcible compulsion,[3] indecent assault by forcible compulsion,[4] unlawful contact with a minor,[5] indecent exposure,[6] attempted rape by forcible compulsion,[7] and various related inchoate offenses.

Paul Levy, Esq. ("Trial Counsel") represented Defendant in pretrial proceedings and at trial. In a meeting shortly after Defendant's preliminary hearing, Defendant told Trial Counsel that he was at the victim's home on the day of the alleged assault and left the home at 4:00 P.M.[8] With the Commonwealth claiming the assault occurred between 3:30 P.M. and 4:00 P.M.[9] and the

---

[3] 18 Pa.C.S.A. § 3121(a)(1).
[4] 18 Pa.C.S.A. § 3126(a)(2).
[5] 18 Pa.C.S.A. § 6318(a)(1).
[6] 18 Pa.C.S.A. § 3127(a).
[7] 18 Pa.C.S.A. § 901(a).
[8] At the PCRA hearing, Trial Counsel testified Defendant told him he left the victim's home at 4:00 P.M. (N.T. 8/13/2013, p. 12). This agreed with the victim's timeline. (N.T. 12/8/2009, p. 103). Defendant also testified at an earlier hearing that after he clocked out he spoke briefly with the victim and that he left the victim's home after Mr. Soto. (N.T. 11/18/2011, pp. 41-42).
[9] *See* Affidavit of Probable Cause attached to the criminal complaint filed on March 18, 2008.

[FN-3-14]

4

53

information provided by Defendant, Trial Counsel did not foresee an alibi defense and did not file a notice of alibi pursuant to Pennsylvania Rule of Criminal Procedure 567. Instead, the defense position was not that Defendant was not there, but that the assault did not occur.

To support this position, Defendant advised Trial Counsel that his mother was a potential witness because he drove to her workplace immediately after the assault was alleged to have occurred. An investigator employed by Trial Counsel interviewed Defendant's mother shortly before trial. At this interview, Defendant's mother told the investigator that her son arrived at her workplace between 4:30 P.M. and 4:40 P.M. (N.T. 8/13/2013, pp. 20-21). With her workplace a thirty to forty minute drive from the crime scene,[10] her statement reinforced the information Defendant provided to Trial Counsel, that he left the victim's home at 4:00 P.M. and drove directly from that location to his mother's place of employment. Defendant's mother also told the investigator that when she saw her son, there was nothing about his appearance, his clothing or physical condition, or his demeanor that indicated he had been involved in an assault. Based on this interview, Trial Counsel planned to call Defendant's mother as a

---

[10] Defendant's mother testified the distance was "a good 40 minutes" drive. (N.T. 12/8/2009, p. 241). Attorney Levy recalled the driving time to be approximately 25 to 35 minutes based upon a Google search he had performed. (N.T. 8/13/2013, pp. 21-22).

54

witness to testify to Defendant's demeanor and condition within an hour after the alleged assault occurred.

A two-day jury trial began on December 8, 2009. At trial, the Commonwealth relied primarily on the testimony of A.D. to prove its case. She gave a detailed account of the assault as described above. As presented by the Commonwealth, with Defendant clocking out at 3:37 P.M. and leaving the victim's home at approximately 4:00 P.M., Defendant had a window of opportunity of approximately twenty-three minutes during which the assault occurred.

After the Commonwealth rested, Defendant offered his mother as his sole witness. Defendant's mother testified to a time frame different from that which she had told the investigator. She testified that on the day of the assault her son arrived at her workplace not between 4:30 and 4:40 P.M., but between 4:00 and 4:15 P.M., and certainly no later than 4:30 P.M. (N.T. 12/8/2009, p. 241). This testimony established a possible alibi for Defendant in that if he arrived at his mother's workplace at 4:00 P.M., or shortly thereafter, given the time needed to travel between the victim's home and his mother's workplace, he would have been on the road at the time the Commonwealth claimed the assault occurred. The Commonwealth objected to this testimony as Defendant had not filed a notice of alibi. The objection was sustained and the testimony stricken. Defendant's mother then testified, as

planned, about her son's demeanor and condition on the day of the assault.

Defendant did not testify in this case. Prior to resting, Trial Counsel met with Defendant to discuss whether Defendant should testify. At this meeting, Trial Counsel advised Defendant not to testify for two reasons. First, Trial Counsel advised Defendant that if he testified, the Commonwealth would impeach him with his prior conviction for forgery.[11] Second, Trial Counsel advised Defendant that he did not believe the jury would find Defendant's testimony credible. According to Trial Counsel, Defendant planned on testifying that A.D. fabricated her testimony about the assault because Defendant declined her sexual advances. Based on this advice, Defendant decided not to testify and the defense rested. Defendant was found guilty by the jury the following day of all charges, except rape by forcible compulsion.

Following his convictions, but prior to sentencing, Defendant's parents hired Mark Schaffer, Esquire and Kenneth Young, Esquire (collectively "Appellate Counsel") to represent Defendant at sentencing and for the purpose of taking a direct appeal. With Appellate Counsel representing Defendant, Defendant was sentenced to an aggregate term of imprisonment in a state

---

[11] Prior to the taking of evidence, we granted the Commonwealth's motion *in limine* to allow the Commonwealth to present evidence of Defendant's conviction for forgery, a felony of the third degree, if he testified. (N.T. 12/8/2009, p. 4).

[FN-3-14]

56

correctional facility of not less than six nor more than twelve years.

On April 9, 2010, Appellate Counsel appealed the judgment of sentence to the Pennsylvania Superior Court. On this appeal, Appellate Counsel raised six claims: (1) whether the Commonwealth failed to provide the defense with requested and mandatory discovery, (2) whether the Trial Court erred in allowing the Commonwealth to ask A.D. leading questions on direct examination, (3) whether the Trial Court erred in denying Defendant's request for a mistrial after the investigating trooper testified that Defendant had volunteered to take a polygraph test, (4) whether the evidence was insufficient to sustain Defendant's convictions, (5) whether the verdict was against the weight of the evidence, and (6) whether Trial Counsel was ineffective both before and during trial.

On May 3, 2011, the Superior Court affirmed Defendant's judgment of sentence. In doing so, the Court addressed only the merits of the claim related to the polygraph test; the remaining claims were deemed either waived or premature. It held that Defendant waived the claims of discovery violations and leading questions because Defendant did not include them in his court-ordered Pa.R.A.P. 1925(b) statement of matters complained of on appeal. Next, it held that Defendant waived the weight of the evidence claim because he did not properly preserve the issue by

[FN-3-14]

8

57

making either an oral or post-sentence motion with the trial court. It also held that he waived the sufficiency of the evidence claim because he did not properly brief the issue. Finally, the Court did not address the claim for ineffectiveness of counsel because it was premature. Defendant did not appeal the Superior Court's decision.

On August 2, 2011, Defendant filed his first PCRA petition, claiming that both Trial Counsel and Appellate Counsel rendered ineffective assistance of counsel. Defendant raised four claims in this petition: (1) that Trial Counsel failed to raise and preserve an alibi defense, (2) that Appellate Counsel failed to preserve several appellate issues, (3) that Trial Counsel ineffectively advised Defendant not to testify, and (4) that Appellate Counsel failed to petition the Pennsylvania Supreme Court for allowance of appeal from the Superior Court's May 3, 2011 decision.

In an opinion dated August 17, 2012, we found Appellate Counsel rendered ineffective assistance of counsel by failing to seek review of the Superior Court's decision. Consequently, we reinstated Defendant's right to file a petition for allowance of appeal with the Pennsylvania Supreme Court *nunc pro tunc*. At the same time, we dismissed Defendant's first, second, and third claims without prejudice, holding Defendant could raise those issues in a subsequent PCRA petition if needed.

[FN-3-14]

9

5 8

Defendant filed his petition for allowance of appeal with the Supreme Court on September 5, 2012. On May 14, 2013, the Court denied this petition. Subsequently, on May 31, 2013, Defendant filed his Second Amended PCRA petition now before us.[12] In this petition, Defendant raises the remaining three issues from his first PCRA petition which we previously dismissed without prejudice.[13]

On August 13, 2013, we held a hearing to allow Defendant to present evidence in support of his petition.[14] Following this hearing, and after receiving briefs on behalf of both the Commonwealth and Defendant, we are now ready to address the merits of Defendant's claims. We do so in the order advanced.

## DISCUSSION

[12] Because Defendant filed this petition within a year of the date the Supreme Court denied his appeal, we have jurisdiction over his petition. We have no jurisdiction over an untimely PCRA petition. Commonwealth v. Frey, 41 A.3d 605, 610 (Pa. 2012). To be timely, the general rule, with three exceptions, is that the petition must be filed within one year from the date the judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." § 9545(b)(3). When appellate rights are reinstated nunc pro tunc, a judgment becomes final when appellate rights on the reinstated appeal are exhausted. See Commonwealth v. Karanicolas, 836 A.2d 940, 944-45 (Pa.Super. 2003). Here, we reinstated Defendant's appellate rights nunc pro tunc and he exhausted those rights on May 14, 2013, when the Pennsylvania Supreme Court denied his petition for allowance of appeal. Defendant then timely filed this petition seventeen days later on May 31, 2013.
[13] Defendant also raised the issue that Trial Counsel rendered ineffective assistance by failing to object to the admission of photographs. Defendant withdrew this issue at the conclusion of the August 13, 2013, hearing. (N.T. 8/13/2013, p. 71).
[14] Based on an agreement of the parties, we also incorporated as part of the record for this petition the transcript from the hearing held on November 18, 2011, for Defendant's first PCRA petition. (N.T. 8/13/2013, p. 6).

1. WHETHER APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY WAIVING SEVERAL APPELLATE ISSUES

Defendant first claims that Appellate Counsel was ineffective by failing to preserve on direct appeal all but two issues for appellate review. Appellate Counsel waived four of the six issues appealed from by not including two issues in Defendant's 1925(b) statement, not properly briefing an issue, and not preserving an issue in either an oral or post-sentence motion. Because Appellate Counsel failed to preserve these issues, Defendant asks us to reinstate his direct appeal *nunc pro tunc*.

Defendant argues that he does not need to establish the three elements for ineffective assistance of counsel as articulated in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987), to have his direct appeal reinstated. He claims Appellate Counsel's waiver of these four claims was *per se* ineffective assistance of counsel.

Generally, to determine if counsel has rendered ineffective assistance, we apply a three-part test based on our Supreme Court's interpretation of Strickland v. Washington, 466 U.S. 668 (1984) in Pierce. In Strickland, the United States Supreme Court held that to establish a claim of ineffective assistance of counsel the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. Our Supreme Court divided this test into a three-part test under which the defendant must establish: (1) that the underlying legal claim has arguable merit, (2) that

[FN-3-14]

11

60

counsel's actions lacked an objective reasonable basis, and (3) that he was prejudiced by counsel's acts or omissions. *Pierce*, 527 A.2d at 975. A failure to establish any of these three elements will defeat a claim of ineffective assistance of counsel. *Commonwealth v. Walker*, 36 A.3d 1, 7 (Pa. 2011).

However, in some circumstances, counsel's conduct will be deemed to be *per se* ineffective. *Commonwealth v. Allen*, 48 A.3d 1283, 1286 (Pa.Super. 2012). One such circumstance occurs when counsel fails to perfect a direct appeal because counsel fails to follow procedural rules. *Commonwealth v. Bennett*, 930 A.2d 1264, 1273 (Pa. 2007). When counsel waives appellate issues because of a failure to follow procedural rules, the first two parts of the *Pierce* test, arguable merit and unreasonableness, are established. *Commonwealth v. Johnson*, 889 A.2d 620, 622 n.3 (Pa.Super. 2005)(holding that the first two prongs of the *Pierce* test "are clearly met where counsel fails to follow procedural rules to ensure requested appellate review of a criminal defendant's claims.").

As for the final element of prejudice, when the conduct of counsel results in the waiver of all appellate issues - causing the defendant to be deprived of his right to a direct appeal - prejudice is presumed. *Commonwealth v. Halley*, 870 A.2d 795, 800 (Pa. 2005). This presumption of prejudice is founded on our courts' interpretation of the United States Supreme Court decision

in United States v. Cronic, 466 U.S. 648 (1984), which our courts have relied upon to find that the "actual or constructive denial of the assistance of counsel falls within a narrow category of circumstances in which prejudice is legally presumed." Commonwealth v. Lantzy, 736 A.2d 564, 571 (Pa. 1999). Our courts find that when counsel fails to perfect a direct appeal, a defendant is constructively denied the assistance of counsel. Commonwealth v. Bennett, 930 A.2d 1264, 1273 (Pa. 2007)("we have repeatedly indicated that the failure to file a requested direct appeal or a 1925(b) statement in support thereof is the functional equivalent of having no counsel at all"). Therefore, when counsel waives all appellate issues, entirely depriving a defendant of his right to a direct appeal, counsel is said to render *per se* ineffective assistance of counsel. Halley, 870 A.2d at 800.

However, this *per se* rule is not applicable when counsel's errors do not *entirely* deprive a defendant of his right to a direct appeal because counsel only waived some - but not all - of the issues presented. Commonwealth v. Grosella, 902 A.2d 1290, 1293-94 (Pa.Super. 2006). When this occurs, our courts do not deem the defendant to have been constructively deprived of counsel. Halley, 870 A.2d at 801. Thus, in these circumstances, the presumption of prejudice dissipates. Grosella, 902 A.2d at 1293. When only some of the appellate issues are waived, we must determine if the waiver

[FN-3-14]

13

6 2

of appellate issues prejudiced the defendant. Grosella, 902 A.2d at 1294.

Here, Appellate Counsel raised six issues on appeal. The Superior Court held that four of those issues were waived. The remaining two were either addressed or deemed premature. Therefore, because Appellate Counsel's waiver of these issues did not entirely deprive Defendant of his right to a direct appeal, prejudice is not presumed. Consequently, counsel was not *per se* ineffective and we must determine if Defendant was prejudiced.

"To demonstrate prejudice, the [defendant] must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Commonwealth v. King, 57 A.3d 607, 613 (Pa. 2012) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* Here, such probability does not exist because the issues Appellate Counsel waived were meritless.

The first claim waived was that the Commonwealth violated mandatory discovery rules by failing to turn over a police report documenting their July 11, 2007, visit to A.D.'s home. This claim is meritless since no evidence was presented to establish that such a report exists. (N.T. 8/13/2013, p. 44-45). Further,

counsel acknowledged at the PCRA hearing that this claim was being withdrawn. (N.T. 8/13/2013, pp. 68-69).

The second waived appellate claim was that we erred in allowing the Commonwealth to ask leading questions of A.D. Trial Counsel only objected once on the basis of a leading question. The question was "[o]kay. Did his penis penetrate your genitals?" (N.T. 12/8/2009, p. 76). This issue is meritless because the question is not leading: it does not suggest an answer. See Commonwealth v. Johnson, 541 A.2d 332, 336-37 (Pa.Super. 1988) (holding that a question that does not suggest an answer is not a leading question because a leading question "puts the desired answer in the mouth of the witness"). Further, even if it was error to permit this question, the error was harmless in that whether or not Defendant's penis penetrated A.D.'s vagina was relevant only to the rape charge for which Defendant was acquitted.

The third waived appellate claim was that the evidence was insufficient to support the convictions. We find this claim meritless because A.D.'s testimony was sufficient to establish all elements on all convicted crimes beyond a reasonable doubt. Defendant has not shown otherwise.

Finally, the last waived appellate claim was that the verdict was against the weight of the evidence. Like with the other claims, this claim lacks merit. It does not shock our conscience that the jury relied on A.D.'s detailed testimony of the assault

[FN-3-14]

15

64

to find Defendant guilty on all convicted crimes. Commonwealth v. Boyd, 73 A.3d 1269, 1274-75 (Pa.Super. 2013) (*en banc*).

Because we find the issues Appellate Counsel waived on appeal to be without merit, Defendant's first claim of error is denied.

## 2. WHETHER TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INVESTIGATE AND PRESENT AN ALIBI DEFENSE

Next, Defendant claims Trial Counsel rendered ineffective assistance by failing to present an alibi defense. To determine if counsel was ineffective for failing to pursue a defense, we apply the three-part Pierce test discussed above. *See* Commonwealth v. Spotz, 896 A.2d 1191, 1217-1219 (Pa. 2006). As to the first part of this test, there is no dispute that failing to interview an alibi witness, to file notice of an alibi defense, and to present an alibi defense when one exists, are claims of arguable merit. *See* Commonwealth v. Stewart, 84 A.3d 701, 712 (Pa.Super. 2013); Commonwealth v. Washington, 361 A.2d 670, 674 (Pa.Super. 1976). Instead, it is the second and third parts of the test, namely whether Trial Counsel had a reasonable basis for his actions and whether these actions caused prejudice, which are in dispute.

In answering whether counsel's actions lacked an objective reasonable basis, we must determine "whether no competent counsel would have chosen that action or inaction, or, [whether] the alternative[] not chosen, offered a significantly greater potential chance of success." Stewart, 84 A.3d at 707. When determining

[FN-3-14]
16

65

whether a reasonable basis for counsel's actions exists, we must make "all reasonable efforts to avoid the distorting effects of hindsight," while also avoiding "*post hoc* rationalization of counsel's conduct." Commonwealth v. Sattazahn, 952 A.2d 640, 656 (Pa. 2008) (citations omitted). We must evaluate counsel's performance based on counsel's perspective at the time the conduct occurred. Commonwealth v. Carson, 913 A.2d 220, 274 (Pa. 2006).

Trial Counsel testified that before trial he did not believe his client had a viable alibi defense. (N.T. 8/13/2013, p. 20). This belief was based on his discussions with Defendant in which Defendant told Trial Counsel that he left the scene of the crime at 4:00 P.M.[15] With this knowledge, and with the Commonwealth claiming the assault was over by 4:00 P.M., Trial Counsel had no reason to believe that Defendant was not present when the assault occurred.

---

[15] Defendant gave a statement to police that is ambiguous on its face as to when Defendant left the victim's home. It reads in part as follows: "[o]n July 10th reported to the office got to the office about 3:37 went inside [A.D.] opened the door entered the home with another co worker [sic] went upstairs and punched-out came back down and wash my hands because it had glue on it said a few words to [A.D.] then when Nelson left I left right behind him about 4 pm received a phone call from the office." Commonwealth Exhibit No. 2. The lack of punctuation in this statement makes it unclear whether Defendant left at 4:00 P.M. or received a phone call at 4:00 P.M. Trial Counsel read the statement to be that Defendant left the victim's home at 4:00 P.M. (N.T. 8/13/2013, pp. 12, 25). This interpretation was supported by his conversations with Defendant. (N.T. 8/13/2013, p. 12).

It was also reinforced by what Defendant's mother told a private investigator employed by Trial Counsel. When interviewed shortly before trial by this investigator, Defendant's mother told the investigator that her son arrived at her workplace sometime between 4:30 P.M. and 4:40 P.M. (N.T. 8/13/2013, p. 21). This time fit well with what Defendant had told Trial Counsel about when he left the victim's home.

That Trial Counsel accepted what Defendant told him about his whereabouts and when he left the victim's home, and that Trial Counsel did not prepare an alibi defense, was reasonable. Our Supreme Court has routinely held that counsel does not act unreasonably by not investigating possible defenses, or mitigating evidence, of which he is unaware, has no reason to suspect, and which is not suggested by what Defendant tells counsel. *See* Commonwealth v. Miller, 987 A.2d 638, 654-55 (Pa. 2009) (holding counsel had reasonable basis not to investigate a witness's mental condition when defendant, as the witness's cell mate for two months, never told counsel about the witness's condition); Commonwealth v. Brown, 872 A.2d 1139, 1149-50 (Pa. 2005)(holding counsel had reasonable basis not to investigate pre-existing evidence of Defendant's mental health to support self-defense theory when defendant never told counsel about his mental health history); Commonwealth v. Bracey, 795 A.2d 935, 944 (Pa. 2001)(holding counsel had reasonable basis to not investigate mitigating evidence of abuse when defendant never told counsel about abuse).

This rule is particularly relevant under the facts of this case where, if the Defendant was not present when the assault occurred at the location claimed, it would be natural and expected that he would tell his counsel this crucial fact. Excluding the victim, Defendant is the only other person who truly knows when he

left the victim's home on July 10, 2007. Under the facts known to him, Trial Counsel acted reasonably in relying on Defendant's recall of when he left the victim's home and centering the defense that no assault occurred on the lack of physical evidence, brief time frame, and perceived shoddy police investigation.[16] *See* Commonwealth v. Rivers, 786 A.2d 923, 930 (Pa. 2001) (quoting Commonwealth v. Laird, 726 A.2d 346, 357 (Pa. 1999) ("Counsel will not be deemed ineffective for pursuing a particular strategy as long as the course chosen was reasonable.")).

Nor has Defendant met the third prong of the Pierce test on this issue. The alibi evidence which Defendant contends was not

---

[16] This evidence included the following: that notwithstanding the struggle described by the victim, neither party had any torn clothing; there was no evidence of any property damage in the home; Defendant exhibited no cuts, bruises or scratches; and when Defendant's mother observed him within 25 to 40 minutes after the assault, there was nothing untoward about his appearance or demeanor. Similarly, the injuries claimed by the victim were relatively minor, some faint scuff marks on her knees and elbows.

The highly circumscribed time for the assault to occur and the chance return of Soto were also to Defendant's advantage. Soto's return to the victim's home was unexpected and could not have been anticipated by the Defendant, yet when Soto returned he observed the Defendant and the victim engaged in friendly conversation, nothing indicative of a brewing assault. Given these observations by Soto, the time for the assault to occur was abridged even further, making it arguably more questionable whether everything the victim described after Soto left the second time could have occurred within this short time span: continued talking between the victim and Defendant immediately after Soto left; the victim struggling and Defendant carrying her to the basement; the attack in the basement, removal of the victim's underwear and the attempt at intercourse; and the victim's escape and flight upstairs, where the victim testified Defendant remained momentarily outside her bedroom door before, after being unsuccessful in gaining access to her bedroom, he decided to leave.

Added to these weaknesses in the Commonwealth's case were numerous apparent deficiencies in the police investigation as pointed out by the defense: no record kept of the July 11, 2007 response to the victim's home, no attempt to examine the victim's or Defendant's clothing for evidence of the assault, no attempt to examine the victim's home or the pool table for evidence of the assault, including possible pubic hair or semen, and no DNA evidence or other forensic tests taken.

[FN-3-14]

presented was contradictory in some respects to other evidence in the case, in other respects did not disprove the occurrence of an assault, and overall did not create a reasonable probability that the outcome of the trial would have been different for several reasons.

First, the variances in the different times Defendant sought to present leaves open the possibility that Defendant committed the assault and still arrived at his mother's workplace by no later than 4:30 P.M., one of the times given by Defendant's mother. Accepting the Commonwealth's evidence that the assault lasted less than twenty-three minutes (i.e., the difference between when Soto left the second time and 4:00 P.M.), there is still sufficient time for Defendant to have assaulted A.D. using the victim's time estimates, left the home by 4:00 P.M., and arrived at his mother's workplace no later than 4:30 P.M., a twenty-five to forty minute drive.

Alternatively, if we accept the earliest time at which Defendant's mother claims he arrived at her place of employment, 4:00 P.M., this would conflict with the time stamped on Defendant's time card[17] and directly contradict Defendant's own statements to police and his counsel that he left the victim's home at 4:00 P.M. (N.T. 12/8/2009, pp. 182-183). Such time would further contradict

---

[17] Assuming a twenty-five to forty minute drive to his mother's place of employment, Defendant could not have been at the victim's home at 3:37 P.M. and still arrived at his mother's workplace by 4:00 P.M.

[FN-3-14]

20

69

the testimony of Nelson Soto, Defendant's co-worker, who testified that he saw Defendant talking with A.D. as he left that day at 3:37 P.M., that Defendant was still there when he returned approximately five minutes later, and that Defendant did not leave with him at that time. *Id.* at 231. To have presented this testimony to the jury, that Defendant arrived at his mother's place of employment by 4:00 P.M., would have devastated and undermined the entire timeline of the defense and its argument that Defendant was present, but there was no assault. Given the strength of this other evidence, it appears unlikely that if counsel had been aware beforehand of what Defendant's mother intended to testify to and if given the choice, counsel would have proceeded with an alibi defense. (N.T. 8/13/2013, p. 48).

On this issue, Defendant was not deprived of effective assistance of counsel. Accordingly, the claim is denied.

### 3. WHETHER TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY ADVISING DEFENDANT NOT TO TESTIFY

Finally, Defendant claims Trial Counsel was ineffective for advising him not to testify.

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

Commonwealth v. Michuad, 70 A.3d 862, 869 (Pa.Super. 2013) (quoting Commonwealth v. Nieves, 746 A.2d 1102, 1104 (Pa. 2000)). Like with other ineffective assistance of counsel claims, the defendant must also demonstrate that his failure to testify caused prejudice. Commonwealth v. Alderman, 811 A.2d 592, 596 (Pa.Super. 2002).

Defendant has failed to establish that Trial Counsel either interfered with his right to testify or that Trial Counsel gave unreasonable advice. First, the evidence established that, after consulting with Trial Counsel, Defendant alone decided not to testify. (N.T. 11/18/2011, pp. 47-48; N.T. 8/13/2013, pp. 42-44).

Second, Trial Counsel's advice not to testify was reasonable. Counsel acts reasonably in advising a defendant not to testify when the defendant's testimony would allow the Commonwealth to impeach the defendant with prior *crimen falsi* convictions. *See* Commonwealth v. Daniels, 999 A.2d 590, 596 (Pa.Super. 2010); Commonwealth v. Thomas, 783 A.2d 328, 335 (Pa.Super. 2001). Additionally, counsel reasonably advises a defendant not to testify when counsel believes the jury would not find defendant's testimony credible. *See* Commonwealth v. O'Bidos, 849 A.2d 243, 250-51 (Pa.Super. 2004) (holding trial counsel reasonably advised his client not to testify on the basis that the jury would not believe his testimony that he had a past relationship with the rape victim).

Trial Counsel advised Defendant not to testify for two reasons. First, Trial Counsel advised Defendant not to testify because if he did the Commonwealth would impeach him with evidence of his prior conviction for forgery. (N.T. 8/13/2013, pp. 41, 54). Although this crime was unrelated to the instant offense and occurred several years earlier, Trial Counsel was justified in advising Defendant about the negative impact evidence of a criminal conviction could have on the jury. Second, Trial Counsel advised Defendant not to testify because he believed the jury would not believe Defendant's testimony. *Id.* at 39. Trial Counsel did not believe the jury would find credible Defendant's testimony that A.D. fabricated her testimony about the assault because Defendant declined her sexual advances. *Id.* at 40-41.

Trial Counsel's advice to Defendant not to testify was not "so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." Rather, Trial Counsel reasonably advised Defendant about the risks of Defendant taking the stand, which it was his professional obligation to do and which Defendant properly factored into his decision not to testify. Because this advice was reasonable, Defendant "must bear the burden of his decision not to testify and cannot shift the blame to his attorney." Commonwealth v. Harper, 614 A.2d 1180, 1188 (Pa.Super.

1992). Consequently, we find this final claim to also be without merit.[18]

## CONCLUSION

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). Against this standard, we find that no act or omission of counsel rendered Defendant's convictions unreliable. Therefore, Defendant's Second Amended PCRA Petition will be denied.

BY THE COURT:



_____ P.J.

---

[18] Defendant also failed to establish prejudice. Our Superior Court has held that to establish prejudice the defendant must "articulate what testimony he would have given had he testified at trial" so the court can assess whether this testimony creates a reasonable probability of a different result. Commonwealth v. Alderman, 811 A.2d 592, 596 (Pa.Super. 2002). Defendant has not articulated what his testimony would have been at trial, thus, he has failed to establish prejudice.

[FN-3-14]

24

73

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    :
                                 :
              v.                 :    No. 289-CR-2008
                                 :
MERRICK STEVEN KIRK DOUGLAS,     :
              Defendant          :

Jean Engler, Esquire                 Counsel for Commonwealth
Assistant District Attorney

Michael P. Gough, Esquire         _ .Counsel for Defendant


MEMORANDUM OPINION

Nanovic, P.J. - August 4, 2014

The Defendant, Merrick Steven Kirk Douglas, has appealed from our order of June 13, 2014, denying his Second Amended Petition for Post-Conviction Relief filed on May 31, 2013. Therein, Defendant claimed both his trial and appellate counsel were ineffective and sought the grant of a new trial.

By Memorandum Opinion dated June 13, 2014, we explained the reasons for our denial of Defendant's requested PCRA relief. A copy of this Memorandum Opinion is attached for the convenience of the Court.[1]

---

[1] On page 4 of the attached Memorandum Opinion we have corrected the date of the first meeting of the victim with the police from July 12, 2007 to July 11, 2007. This was an error in our original Memorandum Opinion, but makes no difference in the analysis.

[FN-42-13]

1

74

Following Defendant's Notice of Appeal filed on June 27, 2014, we directed Defendant to file a concise statement of the Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On July 17, 2014, Defendant timely filed the requested concise statement.

The issues raised in this statement are identical to those raised in Defendant's Second Amended Petition for Post-Conviction Relief and were addressed in our June 13, 2014 Memorandum Opinion. For this reason, we refer the Superior Court to that opinion to fulfill our responsibility under Pa.R.A.P. 1925(a).

BY THE COURT:

_____
                                    P.J.

[FN-42-13]

2